[Filed February 25, 1889.]

JOHN BIGNE, *v.* JOHN B. DAVID, ADMINISTRATOR OF THE LEGATEES OF PIERRE MANCIET, DECEASED.

PRACTICE -- LONG AND COMPLICATED ACCOUNTS. — Where it becomes neces-sary to examine long and complicated accounts, an order of reference, in addition to directing the referee to take the evidence, ought also to direct him to find the facts and state the effect between the parties.

DECREE AFFIRMED. — Upon consideration of all the facts, *held*, that the decree of the court below ought to be affirmed.

APPEAL from Multnomah County.

*W. W. Page,* for Peter and F. P. Manciet and Gerdes & Botefuhr.

*Strong & Strong* and *James Gleason,* for Bigne.

*M. G. Munly* and *Watson, Hume, & Watson,* for J. B. David.

*Dolph, Bellinger, Mallory, & Simon,* for Linda Manciet.

STRAHAN, J.—This proceeding was instituted in the county court of Multnomah County by John Bigne against the personal representative and the legatees under the will of Pierre Manciet, deceased.    A copy of Manciet's will is set out in *Palicio* v. *Bigne,* 15 Or. 142.    Since the death of Manciet's widow, Petra Cortez, John Bigne has acted as

sole executor of said will; but on the twenty-fourth day of May, 1887, the county court of said Multnomah County appointed John B. David administrator of the partnership of Manciet & Bigne, and the possession of all the partnership property of said firm passed into his hands.

On the twenty-sixth day of May, 1887, Bigne made, verified, and presented the following claim against the estate of Manciet:—

"Estate of Pierre Manciet, deceased.
                               "To John Bigne, Dr.
"To one half of entire amount, $54,746.04, due from firm of Manciet & Bigne, composed of Pierre Manciet and John Bigne as equal partners, to John Bigne, $27,373.02.

"In addition to the above, I also claim, as per annexed petition, to be the owner of the undivided one half ($\frac{1}{2}$) of all the property described in the inventory (except that certain furniture described as being in 'Mrs. Manciet's residence,' and appraised at $685.62), in this estate hereinbefore by me named and filed.      JOHN BIGNE.

"STATE OF OREGON,      ⎱ ss.
    COUNTY OF MULTNOMAH.⎰

"I, John Bigne, being duly sworn, say that I am the above-named claimant, and have personal knowledge of the facts in reference to my foregoing and annexed claim against the estate of Pierre Manciet, deceased; that the amount claimed therein is justly due; that no payments have been made thereon except as stated; and that there is no just counterclaim to the same to my knowledge. And affiant further says that his claim of an undivided one-half interest in said property is just and true, and that there is no offset to the same.      JOHN BIGNE.

"Subscribed and sworn to before me this twenty-sixth day of February, A. D. 1887.
            "C. D. BOWLES, Notary Public for Oregon."

With said claim was presented the following petition:—

"In the county court for the state of Oregon for Mult-nomah County.

"In the Matter of the Estate of Pierre Manciet, deceased. } Claim of John Bigne.

"To the HONORABLE JOHN CATLIN, Judge of said Court.

"Your petitioner, John Bigne, would respectfully show to your honor that the said Pierre Manciet died on the twelfth day of April, 1881, and that your petitioner is now the duly appointed, qualified, and acting executor of the estate of Pierre Manciet, deceased, and has been such executor ever since the death of said Pierre Manciet; that on the sixth day of November, 1866, said Pierre Manciet and this petitioner, by mutual consent, at Portland, Oregon, entered into a general partnership in the business of a hotel and restaurant, and in acquiring and improving real property, in which partnership both parties were to contribute equally to the expenses, and were to share equally in the profits and losses thereof; the said partnership was not dissolved until it was so dissolved by the death of Pierre Manciet; that all the trade and business of said copartnership was carried on, and all of its property and assets were taken and held, in the name of said Pierre Manciet; that said partnership enterprise was a very profitable one; and said partnership acquired a large amount of assets and incurred liabilities; that the assets of said firm consisted of all the property described in the inventory herein as standing in the name of Pierre Manciet, except that mentioned as furniture in 'Mrs. Manciet's residence'; and all the liabilities of said firm have been proved up in the matter of the settlement of said estate, which is now going on. And your petitioner further shows that during said partnership your petitioner advanced large sums of money to said firm, and allowed said firm to use and retain in its business nearly all of his share of the

profits thereof; that said Pierre Manciet put no money
into said business, and from time to time drew out all of his
profits therefrom; that at the death of said Pierre Manciet,
said copartnership was owing to your petitioner the full sum
of fifty-four thousand seven hundred and forty-six and
four hundredths dollars ($54,746.04), and was not owing
said Pierre Manciet anything; that one half of said amount
of $54,746.04, to wit, $27,373.02, was and is a just claim of
your petitioner against the estate of said Pierre Manciet,
deceased; that, as above stated in the foregoing claim and
affidavit hereto annexed, there is no just counterclaim
or offset to the same, and no payments have been made
thereon; that by reason of being executor of said estate,
your petitioner cannot examine or approve his said claim,
but is compelled to and hereby does present the same to
your honor for your examination and approval. And your
petitioner further shows that all of the property embraced
in and described in the inventory of the estate of said
Pierre Manciet, hereinbefore filed, and to which reference
is hereby had, except that portion of said property de-
scribed as household furniture in Mrs. Manciet's residence,
was purchased by said copartnership with its own moneys,
and was and is partnership property, and your petitioner
is the equitable owner of the undivided one half thereof;
that all of said property was taken by said copartnership
and held in the individual name of said Pierre Manciet,
and was so held by it at the time of the death of said
Pierre Manciet, and said Pierre Manciet, at the time of his
death, held the legal title to said property for said copart-
nership, and not otherwise; that owing to the fact of the
legal title to all of said property standing in the name of
said Pierre Manciet, and all of the liabilities of said co-
partnership were contracted in the name of the said
Pierre Manciet, all of said property was by your petitioner
(saving, however, his rights as such partner) included in

the inventory of said estate of Pierre Manciet, deceased.
Your petitioner admits and alleges that all of said prop-
erty is first subject to the payment of all other just claims
heretofore proved up in said estate; that all the claims
against said estate, and all debts and liabilities of said co-
partnership, except this claim of your petitioner, have
been duly proved up against said estate, and said estate
is more than ample to satisfy all of said claims.   Where-
fore your petitioner prays that the foregoing and annexed
claims against said estate of Pierre Manciet, deceased, may
be examined and allowed at said sum of $27,373.02, and
made payable out of the undivided one-half interest in
said property equitably owned by said Pierre Manciet, de-
ceased, after the payment and satisfaction of said other
claims; that the claim be paid by said estate, or that your
petitioner have leave to file a petition for the sale of the
interest of said Pierre Manciet in so much of said prop-
erty as may be necessary to satisfy said claim, and inter-
est and costs and expenses; that a citation issue to all heirs
and parties interested in said estate, to show cause upon
a day certain to be fixed by your honor why the prayer of
this petition should not be allowed, and for such other or
different relief as may be right in the premises.

"STRONG & STRONG, Attorneys for Petitioner."

This petition was properly verified on the eleventh day
of March, 1887; Rachel Manciet, Vincent, Madaline, Louisa,
and Pauline Manciet, by E. B. Watson, their *guardian ad
litem*, appeared and objected to the allowance of said claim,
or any portion thereof, and alleged that the hotel in Vic-
toria known as the Hotel de France was also partnership
property, and required the said John Bigne, who had sold
said last-named property and received the proceeds of
such sale, to account for the same as partnership property.
Issues were duly joined, and the matter referred to take
the evidence.

After the evidence had been taken, the parties made and filed in said matter the following stipulation: —

"In the county court of the state of Oregon for Multnomah County.

"In the matter of the claims of John Bigne against the estate of Pierre Manciet, deceased, etc.

"Stipulation for submission of all claims of or against said John Bigne individually or as executor, etc.

"Whereas, John Bigne, executor of the estate of Pierre Manciet, deceased, and until the appointment of John B. David, herein professing to act as the executor also of the partnership estate of Manciet and Bigne, has heretofore prior to the appointment of said John B. David presented to this court for its approval his claim against the estate of Pierre Manciet, deceased, for an undivided one-half interest in all the property described in the inventory of said Manciet estate, and also for a large sum of money claimed by him to be due to him by said Pierre Manciet, deceased, upon a partnership accounting between them.

"And whereas, divers controversies have arisen in regard to said claim, and by order of this court the same has been referred to a referee, and evidence has been taken thereon, which evidence has been reported back to this court.

"And whereas, said John Bigne claims, in addition to said former claims, to have made large advances under the will of said Pierre Manciet, and as executor and as acting executor since the death of said Manciet, which amount to the date thereof is set out in his account purporting to be his final account herein, filed on the ninth day of September, A. D. 1885.

"And whereas, he claims to have made other advances since said filing of said final account; and whereas, it is to the best interests of all parties that all controversies in

regard to said claims should be finally determined; and whereas, in the present involved condition of said estates it is difficult to determine in what manner to settle said claims and accounts between said John Bigne, individually and as executor or administrator, and said estate or estates, except in this proceeding; and whereas all parties in interest have consented thereto.

"It is hereby stipulated that John B. David, administrator of the partnership estate of Bigne and Manciet, may be joined as a party hereto; that this court in this proceeding shall, upon the evidence submitted to it, and upon such further evidence as may be taken hereunder, and without other or different pleadings, ascertain, determine, and declare,—1. What interest as a partner or otherwise said John Bigne now has in all or any of the property described in the inventory of the estate of Pierre Manciet, deceased; 2. The amount due said John Bigne upon a partnership accounting between himself and Pierre Manciet, deceased, at the date of the death of Pierre Manciet, with such interest as the court may allow to the date of its decision; 3. The amount due said John Bigne from the said property of said estate or partnership, or the partnership administrator, for advances by said Bigne under the will of the said Pierre Manciet, deceased, or upon any of said accounts as shown by said final account or otherwise, since the death of said Pierre Manciet; 4. The amount, if any, that said John Bigne as executor or otherwise should account for to said partnership or other estate for rent, or any other reason; to the end that a complete settlement may be made of all said claims and controversies. Nevertheless, the findings and decree of said court may be appealed from in the usual way, as from a suit or cause regularly pending and determined.

"It is further understood and agreed that said John Bigne and said contestants and other parties hereto may

within, from this date, introduce additional evidence for
or against advances made by said John Bigne since said
final settlement.

"And that this court, upon final hearing, shall make
such orders and decrees, appealable from as aforesaid, as
may effectuate and enforce this agreement, and do right
and justice in the premises in accordance with its find-
ings hereunder.

"And this court and all appellate courts may, at any
time,.allow any of the parties hereto to file such further
papers, pleadings, or petitions, supplemental or otherwise,
if any, as this court or any appellate court may deem
necessary or advisable.

> "STRONG & STRONG,
> "JAMES GLEASON,
>> "Attorneys for John Bigne.
> "WATSON, HUME, & WATSON,
> "M. G. MUNLEY,
>> "Attorneys for Contestants.
> "JOHN B. DAVID,
>> "Administrator of Partnership."

Upon the filing of this stipulation, the cause was again
referred, and a large number of depositions taken by the
respective parties; and the books of account of the part-
nership, extending probably over the entire time of said
partnership, were also introduced in evidence.    The ref-
eree made no findings of either fact or law, for the reason
the order of reference did not empower him to do so; but
it seems to us that such findings were necessary to enable
this court to review the questions of fact in a satisfactory
manner upon which the decision of this case must depend.
Such finding would have narrowed the controversy, and
brought the parties to a direct issue upon comparatively
few questions of fact, and it might have then been pos-
sible to have examined the evidence in relation to them.

The county judge seems to have given the facts a careful examination, and reached certain conclusions of fact which are stated in his findings, and entered a decree in accordance therewith, from which both sides appealed to the circuit court, where a *pro forma* decree was given affirming the decree of the county court, from which last-named decree both sides also appealed to this court.

The findings of the county court are as follows: "That said Peter Manciet died on the twelfth day of April, A. D. 1881, in Multnomah County, Oregon. He and said John Bigne had, as equal copartners, been engaged in the restaurant and hotel business in the city of Portland, in said county and state, continuously from about the eighteenth day of September, A. D. 1866, to the date of Manciet's death, at which last date they were engaged in keeping the St. George Hotel in said city; that, prior to the date of the copartnership between them as aforesaid, they had been copartners in the hotel and restaurant business at Victoria on Vancouver Island, from about July, A. D. 1858, to about September 18, 1866, but said copartnership had been settled up and dissolved prior to the existence of the copartnership established at Portland aforesaid. And all the interest of the partnership at Victoria, in both real and personal property, had been sold and conveyed to John Bigne, and Manciet owned there only the property mentioned in the inventory; that lots numbered 1 and 2 in block numbered 128, in the city of Portland, were purchased by the firm for its use, and paid for with money belonging to the firm, and thereafter the said St. George Hotel was erected upon said lots by said copartnership for its use, and paid for and furnished as a hotel with the money and credit of said firm, and by it occupied and used as a hotel, and was so used at the time of Manciet's death; that blocks numbered 92 and 93 in the city of East Portland, in said county,

and a certain tract of land containing five acres, situate in said county, were each and all of them purchased with money belonging to said firm, and after the several purchases, the taxes, repairs, and expenses of caring for said lots and parcels of land was paid by the firm out of its money, and the rents and income therefrom were received by the firm and went into its business; that the title to each and all of said parcels of land, including said lots Nos. 1 and 2, stood in the name of said Peter Manciet at the time of his death; that he held the same in trust for the said copartnership; that a certain tract of land described in the inventory filed in said estate, as containing ten acres, was purchased by the said Peter Manciet with money by him drawn from the business and funds of said copartnership, and by him charged to himself on the books of the firm. The household furniture and other property in the residence of Peter Manciet, deceased, was purchased by him for his own use.

"2. John Bigne put into the partnership business, over and above amounts put in by Peter Manciet, prior to his death, as follows:—

| | | |
|---|---:|---:|
| March 11, 1872 | $300 | 00 |
| July 26, 1880, to pay Ladd & Tilton | 600 | 00 |
| Oct. 19, 1880, to pay Ladd & Tilton and Walter Bros. | 1,000 | 00 |
| Dec. 6, 1880, to pay Cooper | 150 | 00 |
| Feb. 28, 1881, to pay Ladd & Tilton | 2,000 | 00 |
| Interest collected from Trimble and Zicken notes | 3,745 | 00 |
| Rents collected from Bigne's house | 1,319 | 25 |
| Total | $9,114 | 25 |

"John Bigne, prior to Manciet's death, drew from the partnership funds, as shown by claimant's exhibit No. 5, filed herein as a part of testimony................................$7,548 65

"And other sums as follows:—

May 11, 1871, money paid M. La Bonne ....... $2,000 00
Money paid Castlebaum ..................... 3,500 00
Money loaned Zeiber, July 8, 1874 ........... 3,000 00
Money loaned Trimble, April 2, 1875 ......... 3,000 00
Money put into Prag speculation, Nov. 1875 ... 1,900 00

Total ....................................$20,948 65
Debits in excess of credits ................. 11,834 40

"Manciet, prior to his death, drew from the partner-
ship business in the aggregate $34,808.43, as follows:—
Pierre Manciet's debits account as shown by
  claimant's exhibit No. 3 ...................$37,642 51
Amount paid for the ten-acre tract of land, as
  shown by the books and charged to Manciet   2,362 50

Total ....................................$40,005 01
Total items deducted as per the following state-
  ment ..................................... 2,396 58

Leaves Manciet's debit account ..............$37,608 43
Items deducted from Manciet's debit account (see claim-
  ant's exhibit No. 3).

"These items, it may be said, are numerous, and amount
in the aggregate to $2,396.58.
Bigne's debits in excess of credits ...........$11,834 40
Manciet's debits in excess of credits ......... 37,608 43
Showing balance in favor of Bigne at Man-
  ciet's death of ..........................$25,774 03

"That Bigne, from October 10, 1866, to December, 1868,
and from June, 1869, to December, 1870, and from
August, 1875, to January, 1876, did not give his time
and attention to the business of the copartnership; that
Manciet kept the books of account during the existence
of the copartnership most of the time, and was the busi-

ness manager of the details of its affairs; that Bigne was cook, and looked after and superintended the cooking department of the restaurant and hotels kept by the firm; that Bigne had ·access to the books of account, occasionally examined them, sometimes made entries in them; that each partner had the utmost confidence in the honesty and integrity of the other, and to such an extent that they were careless as to how they stood upon their books, and often entries were not made which should have been made.

"3. At the time of Manciet's death, as appears by the books of the firm, there was cash on hand which should be charged to Bigne.... $1,623 14

Since Manciet's death Bigne has received and collected rents from partnership property amounting to.......................... 4,142 00

Upon a note of $1,510.75, dated January 19, 1879, and made to said firm, upon which a payment of $900 had been made before Manciet's death, to wit, March 25, 1881, Bigne admits receiving the sum of.............. 650 00

Inasmuch as Bigne makes no explanation concerning the terms of said note, he should be charged interest on said sum of $650 at the rate of eight per cent per annum for four years two months and twenty-two days, making.. 219 80
Being from date of payment of the said $900.

It appears by the firm's books that, at the time Manciet died, there was due the firm in the neighborhood of $1,000. As Bigne makes no accounts of these book-accounts, he should be charged with the amount that was collected, say............................ 500 00

Total............................... $7,134 94

Bigne should be charged with rent of the St. George Hotel and furniture, for seventy months, at the rate of $300 per month (that being deemed reasonable) making....:....$21,000 00

Total.................................$28,134 94

"Bigne should be credited with money expended since Manciet's death,—

For repairs to real estate.....................  $2,238 07
For payment of interest made...............  6,066 75
For taxes paid to the amount of...........:.  654 90
(Items of $322.76, $35.00, $16.25, and $71.59 disallowed.)
For insurance............................  827 00
For miscellaneous payments...............  465 00

　Total................................$10,251 72

Charges in excess of credits................. 17,883 22

" STATEMENTS OF ACCOUNTS BETWEEN BIGNE AND THE ESTATE OF MANCIET.

"Receipts by Bigne, as executor,—

From sale of lot in Victoria................  $950 00
From life policy on Manciet's life............  2,010 00

　Total............................. $2,960 00

"As such executor he should receive credits as follows:—

Payment of debts of Manciet................ $3,156 52
Payment for support of Manciet's widow and minor children......................:...  3,748 00
Advances to devisees (children) to August, 1885, besides above not disputed, and therefore allowed.................................:....  3,365 84
.Disallowed $3,148.71, as the same appeared to be advances made by executor without authority to devisees, children of deceased.

| | |
|---|---|
| Commissions as executor..................... | $934 91 |
| Contestants admit the executor should be credited with supplies, support, etc., furnished the minor children of the deceased, and not in above items............................. | 1,384 84 |
| Deduct receipts from disbursements, and it leaves the estate of Manciet indebted to Bigne, as executor, in the sum of.................... | 9,530 87 |

## "CONCLUSIONS.

"The decree should be, that Bigne recover from the partnership estate the sum of $7,890.81, and after the payment of said sum, that the partnership estate be equally divided between the said John Bigne and the estate of P. Manciet; that Bigne recover from the estate of P. Manciet the sum of $9,530.87; that the decree be based in other respects upon the foregoing findings of fact.                    "JOHN CATLIN, Judge."

1. Counsel opposing Bigne's claims contend that the hotel property at Victoria, which it appears Bigne sold and received the proceeds of, ought to be brought into the account, and Bigne be made to account therefor. Bigne says that when Manciet left Victoria to engage in business in Portland, the partnership existing at the former place was dissolved, and that he assumed the debts and liabilities of the concern, and purchased the interest of his copartners. The evidence is not satisfactory in relation to these Victoria transactions. There is much force in the claim of counsel that said partnership continued. On the other hand, Bigne's counsel contend that the ten acres of land mentioned in the findings, and which the court below found was Manciet's individual property, was in fact purchased with the money of the partnership, and therefore is partnership property. This claim seems to me to be equally as well founded as the other. Both may be

correct, but viewing this case in all of its complications, we have concluded not to disturb the findings on these points either way,—one substantially offsets the other.

2. The court below charged Bigne with rent for the use of the St. George Hotel for seventy months, at the rate of three hundred dollars, making twenty-one thousand dollars. To this Bigne's counsel object. It appears that Bigne and Mrs. Manciet qualified as the executors of Manciet's will, and that Mrs. Manciet lived a little over one year thereafter; that during said year Bigne wished to leave the hotel, and that he was offered $225 per month for it, but that Mrs. Manciet, being a joint executor, and having equal authority with himself, would on no account consent to it. Under these circumstances, I doubt very much if Bigne is chargeable with rent, though he continued to occupy the building. He was not bound to desert it in order to relieve himself of the rent. And it may be questioned whether or not a preponderance of the evidence proves that the rental value of the St. George Hotel was three hundred dollars per month. But these considerations in favor of Bigne are again met by claims quite as well sustained on the other side, all of which no doubt were duly weighed and considered by the learned county judge of Multnomah County in passing upon the evidence and the accounts. So long a time has elapsed since most of the events involved in this controversy happened that we cannot hope to reach the whole truth, or to exact justice between these parties. The most we can expect to accomplish is to do approximate justice. Their methods of business throughout the whole course of the partnership preclude anything more than that. In addition to this, Bigne and Manciet were the most intimate friends. Manciet knew Bigne, and trusted him fully, confiding everything to him in the settlement of the estate in the most unreserved manner. Under these circumstances,

nothing short of treachery and willful falsehood on Bigne's part would justify the court in adopting the theories of counsel for the legatees in relation to Bigne's conduct.

3. Something was said by counsel for the legatees in relation to the inequality of the advances made by Bigne to some of the said legatees, but that can be considered when the county court shall come to make its final decree of distribution. It is an equity arising between such legatees, to be adjusted and settled upon a final settlement of the estate. Bigne has no interest in that question in the present state of the record.

4. All the parties to this controversy are equally interested in its settlement, and litigation for that purpose seems to have been necessary. The cost of the litigation will therefore be first paid out of the fund in court. All matter of form was waived by counsel, and we neither considered nor decided anything except the state of the accounts.

After giving the case the fullest consideration, we have concluded to affirm the decree, not however, without a consciousness that the result may fail to give some of the parties as much as they ought to receive; but the facts are dimmed by time, the books are incomplete, the business seems to have become complicated in many ways not here alluded to, and which could not now be unraveled and explained.

Let the decree be affirmed.