**STRATTON et, Receiver, etc, v WRIGHT MANUFACTURING CO et**

Ohio Appeals, 1st Dist, Hamilton Co

No 4346. Decided April 17, 1933

Mallon, Vordenberg & Marble, Cincinnati, for plaintiffs in error.

John Dineen, Dayton, and Clarence Denning, Cincinnati, for defendants in error.

**OPINION**

By HAMILTON, PJ.

The claim that there was no legal corporate authority for the execution of the contract and mortgage is based on the proposition that the contract and mortgage was signed by T. B. Wright, President, without proper authority from the Directors or Stockholders.

It appears prior to September 1931, the Wright Mfg. Company was in financial difficulties and was seeking refinancing. Mr. Wright took the matter up with The Dayton Handle and Golf Company and through negotiations, the contract above recited was entered into. For this purpose the records of the company disclose the following proxy, from the other two members of the Board of Directors, who are non-residents of Ohio, but residents of New Orleans, Louisiana.

"New Orleans, August 25, 1931.
Mr. T. B. Wright,
Cincinnati, Ohio.
Dear Sir:

This constitutes our proxy to vote our interests in the Wright Manufacturing Company, Inc., of Cincinnati, Ohio, to close any business association or consolidation which will serve the best interests of all the stockholders of the said Wright Manufacturing Company, Inc., with any person, persons, corporation or corporations, who are in a financial position to fulfill their part of the agreement.

Yours very sincerely,
(S) Ole H. Olsen,
(S) C. C. Liboll."

The records disclose on September 5th notice of a special meeting of the Board of Directors, for the purpose of considering a new financing plan with the Dayton Handle and Golf Company, was given.

It thus appears that Wright had full authority to act for the Company in the matter and his acts are therefore binding upon the Company. See **Fritsch Mfg. Company v Elmont Bldg. & Savings Co., 11 O.C.C. (N.S.) 356; Bank v Burns, 88 Oh St 437; 7 Ohio Juris. 281; 14 O.C.C. 289.**

The claim that the note and chattel mortgage were never delivered is not supported by the evidence.

It is claimed that the note and mortgage did not become a binding lien in that the full amount of $20,000.00 as provided for therein, was not paid. The Dayton Handle and Golf Company did refuse to make further advances after sometime in February of 1932. This refusal was for the reason that there was a large discrepancy in the statement of assets as contained in the contract and the actual existing value as disclosed by inventory and appraisement, and further the refusal of the Wright Manufacturing Company to carry out its part of the contract as provided in paragraph five (5) of the contract concerning the removal of the Wright plant to Dayton, Ohio.

The contract certifies that the assets of the Wright Company, at the time the contract was entered into on September 10th, 1931, were $49,287.50 and its liabilities $9,100.00 and a statement of these figures was attached. The Dayton Handle and Golf Company proceeded to make advances through the Fall of 1931. The progress of the Company was not satisfactory to the Dayton Handle and Golf Company, whereupon the financial statement was made December 31, 1931, which showed assets of $21,936.65, a shrinkage of $27,350.85 and Liabilities of $16,936.65, an increase in liabilities of $7,836.65. This condition existed notwithstanding the Dayton Handle and Golf Company had advanced $8100.00 in cash.

The second paragraph of the contract, providing for the advancing of $20,000.00 recites:

"Said sum to be available as and if needed by the party of the second part."

There is conflicting evidence as to why the plant was not moved to Dayton, Ohio, in accordance with the contract. Wright claims he was financially unable to move and that the building of the Golf Company was not strong enough for the machinery.

This is disputed by the evidence given by the president of the Dayton Handle and Golf Company. In this situation the Dayton Handle and Golf Company refused to make further advances and the only serious question we see in this case is as to whether or not they were justified in refusing to make further advances out of the $20,-000.00 provided for and not having done so, can they claim the lien under the mortgage for the amount advanced.

The law, announced in **Spader v Lawler**, 17 O. 371, is that a mortgage given to secure future advances covers all advances made, and it is stated in **11 Corpus Juris**, 448:

"A mortgage covering future advances will attach only from the date of the advances and not from the date of the mortgage."

and,

"In the absence of statutory prohibition when executed in good faith and not for the purpose of protecting property from creditors, a mortgage given to secure future advances alone, or an existing debt and future advances, is valid and enforceable to the extent of the amount due at the time when adverse rights attach to the property, or the mortgagor exercises his right to take possession."

Under these rules, the amount of money advanced under the chattel mortgage and the terms of the contract, attach as a lién from the date of the advances. The amount of the advances in this case became a valid and enforceable lien under the mortgage, to the extent of the amount due at the time when adverse rights attached to the property.

There is nothing in the record to show that the adverse rights claimed by plaintiff in error attached prior to the advances made by the intervenor, The Dayton Handle and Golf Company, and the trial court was correct in holding that the advances were valid and enforceable under the chattel mortgage and that judgment is affirmed.

ROSS and CUSHING, JJ, concur.